ALBERT C. CORPENING v. W. H. WESTALL ET AL.

(Filed 16 December, 1914.)

1. Deeds and Conveyances—Lines and Boundaries—General Reputation—Remoteness—Evidence—Corroboration.

Common reputation is competent evidence on questions of location of a given line or boundary of lands when it is of comparatively remote origin. existed before the controversy arose, and is supported by evidence of occupation and acquiescence tending to give the land some fixed and definite location; and when general reputation of this character is introduced upon the trial, evidence of the reputation existent at a subsequent period may be received by way of corroboration.

2. Same—Sufficiently Remote.

Where damages for wrongfully cutting timber on lands is made largely to depend upon the establishment of the true dividing line between adjoining owners, general reputation of an old marked line, claimed by one of the parties to be the true one, existing before the controversy arose, is competent which tends to show that this line existed as far back as the Civil War, and before; was then pointed out by old persons, now dead, as such; and thereupon it is further competent for a witness at the trial to testify that he had known this line as far back as 1800 as the line contended for, and that at that time the same general reputation was prevalent; and it is *Further held*, that the rejection of the evidence in such cases, being on the principal question presented and determinative of the issue, constitutes reversible error.

APPEAL by defendant from *Webb, J.,* at September Term, 1913, of BURKE.

Civil action to recover damages for wrongfully cutting timber on land claimed by plaintiff.

Verdict and judgment for plaintiff, and defendant excepted and appealed.

*J. T. Perkins for plaintiff.*
*Avery & Ervin and S. J. Ervin for defendant.*

HOKE, J. Plaintiff claimed the land in controversy under a deed from E. J. Ervin, clerk and master, to father of plaintiff, dated 17

January, 1848, and in which the northern line of plaintiff's tract is described as follows: "Thence north 172 poles with Moore's line to a black oak on John Wakefield's line; thence east 72 poles with Wakefield's line to a Spanish oak; thence same course 56 poles to a chestnut on Joseph McGimsey's line," the northern line, shown on map, as claimed by plaintiff, being from a black-oak stump east to 9, and offered evidence to show continuous occupation under said deed, but south of the *locus in quo*.

Defendant, owning land to north of plaintiff's tract, claimed under a grant of State to Robert and William Tate, dated 30 May, 1795, and mesne conveyances passing such title to defendant, one of the mesne owners being John Wakefield, who had executed one of the deeds in the line of defendant's title; said grant being represented on the map by the letters A, B, C, D; · C, D being the south line of defendant's tract as claimed by him, and 50 poles south of plaintiff's northern line as contended for by him.

The land in controversy, therefore, from which defendant had cut the timber was between these two lines: black-oak stump to 9, to which plaintiff claimed, and the line C, D, parallel thereto and 50 poles further south, to which defendant claimed.

In order to show that the line C, D was the correct line, defendant offered evidence tending to show "that the line C, D was a marked line and had been pointed out by parties, now dead, both prior to and shortly after the Civil War, as the line of the Robert and William Tate grant, and also as the John Wakefield line, said John Wakefield being one of the immediate grantors under whom defendant claimed." And, in order to further strengthen the position that the John Wakefield line, called for in the plaintiff's deed, was the marked line C, D, defendant offered a witness, Joe Tate McGimsey, who testified that he had known the line C, D as a marked line since 1879.

Defendant then proposed to ask this witness if, prior to the institution of the suit and as far back as 1880, the line C, D was, by general reputation in the community, known and called by any certain name; and again, "By what name was the line on the map designated as the line C, D generally known and called?" Counsel stating that he proposed to show by this witness that, as far back as 1880, the line C, D was generally known and reputed to be the John Wakefield line. An objection by plaintiff was sustained, the evidence excluded, and exception duly noted. It is the well recognized principle in this State that evidence of common reputation will be received on questions of private boundary, the limitation being, "That such reputation had its origin comparatively remote; that it existed before the controversy, and that it attached itself to some

monument of boundary or natural object or is supported by evidence of occupation and acquiescence tending to give the land some fixed and definite location." *Sullivan v. Blount,* 165 N. C., pp. 7-11. And, on this subject, it has been further held, "That when there has been evidence offered of general reputation, sufficiently remote, as to the location of a given line or corner, evidence of the reputation existent at a subsequent period and otherwise permissible may be received in evidence by way of corroboration." *Ricks v. Woodard,* 159 N. C., 647.

A correct application of the principles as stated and sustained in these opinions are, in our opinion, against the ruling of his Honor on the question presented. There were facts in evidence tending to show that the line C, D was a marked line as far back as the late Civil War, and before that, and was pointed out then by old persons, now dead, as the line of the William and Robert Tate grant and as the John Wakefield line; and, when it was proposed to show by the witness McGimsey that this same line was known by him to be a marked line as far back as 1880, and that the general reputation then prevailing was that it was the John Wakefield line, the evidence should have been received. On the facts presented, it was competent, as being sufficiently remote within the meaning of the decisions, and was clearly so as corroborative of evidence tending to show a much earlier origin of this general reputation. The evidence, therefore, was competent and, being on the principal question presented and determinative of the issue, we must hold that its rejection constitutes reversible error, entitling defendant to a new trial. It is so ordered.

New trial.